UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>ALI HASSAN ATWI,<br><br>　　　Defendant. | Case No. 18-20607<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANT'S EMERGENCY MOTION
FOR COMPASSIONATE RELEASE [27]**

Many inmates and staff members at the Milan federal prison (FCI Milan) have been diagnosed with the novel coronavirus. This highly contagious respiratory infection is particularly dangerous for people who have serious underlying medical conditions, like lung disease. In the midst of the COVID-19 pandemic, Ali Atwi, an FCI Milan inmate serving a four-month sentence, believed he had active tuberculosis, another highly contagious ailment that primarily affects the lungs. So he filed an emergency motion for immediate compassionate release. The Government opposes the request. The Court conducted a videoconference hearing last Thursday and the parties provided supplemental briefing the next day. For the reasons set forth below, the motion is granted.

**I.**

Ali Atwi and his wife, Madiha Atwi, own and operate the Downtown Food Shop, a convenience store in the Flint bus station. (ECF No. 20, PageID.54.) They have four young children including one with autism. From approximately June 2012 through September 2014, they received more than $250,000 through the illegal exchange of food stamp benefits. (ECF No. 14, PageID.28.) They each pled guilty to one count of food stamp fraud and one count of making and

subscribing a false income tax return. (ECF No. 14.) In addition to paying restitution in the amount of $984,000 to the U.S. Department of Agriculture and an additional $69,000 to the Internal Revenue Service, Atwi, who has no prior criminal history, was sentenced to four months in prison. (ECF No. 26.) He remained on bond pending his reporting date to the Bureau of Prisons, which was not to occur before March 15, 2020—after his wife had served her sentence of home confinement. (*Id.*)

Unfortunately, timing was not on Atwi's side. A mere week after Atwi reported to the BOP, Michigan Governor Gretchen Whitmer issued the following statement: "The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease." Executive Order, No. 2020-20 (Mar. 22, 2020). A few days later, in recognition of the unique challenges faced by prisons for social distancing, the Chief Judge of this District issued an Administrative Order establishing a protocol for dealing with motions to delay self-reporting. *See* Administrative Order, 20-AO-024 (March 26, 2020). But again, shortly before being able to take advantage of this order, Atwi had reported to Milan. According to Atwi's counsel, at the time of his motion 10 prisoners and two staff members at Milan have tested positive for COVID-19. (ECF No. 27, PageID.197.) Milan provides a daily COVID-19 report to the Court and these numbers were significantly higher—37 inmates and a similar number of staff members—as of April 17, 2020.

Atwi has now filed an emergency motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) ("FSA"). (ECF No. 27.) The motion states that Atwi was coughing up blood and believed he had been diagnosed with active tuberculosis on April 9, 2020. (ECF No. 27, PageID.197.) The Government subsequently provided the Court with Atwi's prison medical

records and an email from a Milan nurse. (*See* ECF No. 32, 33.) The nurse advises that Atwi "has been diagnosed with Latent [Tuberculosis]," that "[h]is chest x-ray is normal and he does not have any diagnosis which would make him a concern for compromised immune system," and "[h]e is asymptomatic and will proceed with latent TB treatment, as directed by the clinical staff." (ECF No. 33.) The Government states that it is still unclear whether Atwi's positive skin test indicates he has latent TB or whether the test is a false positive caused by a particular vaccination that he may have received. (ECF No. 30, PageID.208; ECF No. 35, PageID.288.)

At the hearing held a few days ago, Atwi's attorney indicated he does not dispute the diagnosis of latent tuberculosis. The government indicates that Atwi will likely receive 12 weeks of antibiotic treatment, but the treatment has not yet started, and it is possible the Bureau of Prisons will decide to hold off and instead refer Atwi to begin treatment once he is released. (ECF No. 35, PageID.287.)

The Government opposes Atwi's release. The Government contends that Atwi has failed to exhaust his administrative remedies and that his latent tuberculosis is not an extraordinary and compelling reason warranting a sentence reduction. On the unique circumstances of this case, the Court disagrees.

## II.

Unless a specific exception applies, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The FSA provides such an exception. Under the Act, a Court may reduce the term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that a reduction is consistent with applicable statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

But normally a defendant may request a so-called "compassionate release" from the courts only after he has fully exhausted all administrative remedies by first requesting release from the Bureau of Prisons. *Id.* More specifically, the FSA provides that the Court may grant compassionate release upon (1) a motion by the BOP or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

As an initial matter, the parties disagree over whether the Court has the power to bypass the exhaustion requirement of the FSA. Atwi concedes that he had not pursued any administrative remedies at the time of his emergency motion. (ECF No. 27, PageID.200.) Instead, he asks the Court to waive the exhaustion requirement and asserts that it has the power to do so in light of the unusual circumstances presented by the current pandemic. (*Id.*) The Government disagrees, asserting that exhaustion is a mandatory statutory requirement that the Court cannot waive. (ECF No. 30, PageID.211.)

District courts across the country faced with the question of whether the FSA's exhaustion requirement is waivable have taken different approaches.

Initially, a number of district courts, principally in the Second Circuit, have found that the exhaustion requirement could be waived, relying on a Second Circuit opinion which held that "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019). *See, e.g.*, *United States v. Perez*, 17-cr-513-3, 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19-cr-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020). *See also Miller v. United States*, No.

CR 16-20222-1, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) (adopting the reasoning of *Perez*).

But many other district courts across the country, including in this Circuit, have found that the exhaustion requirement was not waivable. *See, e.g.*, *United States v. Matthews*, No. 14-cr-20427, 2020 U.S. Dist. LEXIS 65934 (E.D. Mich. Apr. 15, 2020); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020); *United States v. Hofmeister*, No. CV 5:16-13-KKC, 2020 WL 1811365, at *2 (E.D. Ky. Apr. 9, 2020). The reasoning of this approach is exemplified by *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440 (D. Or. Apr. 6, 2020). The court in *Holden* refused to rely on *Washington* to find the FSA exhaustion requirement could be waived. The court noted that *Washington* "was a case brought pursuant to the Controlled Substances Act (CSA), 21 U.S.C. § 801, which 'does not mandate exhaustion of administrative remedies.'" *Holden*, 2020 WL 1673440, at *9 (quoting *Washington*, 925 F.3d at 116). Instead, the exhaustion doctrine under the CSA is judge-made, and thus subject to judge-made exceptions. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). But the Supreme Court made clear in *Ross* that the same is not true of statutory exhaustion requirements, which are imposed by Congress, and thus cannot be altered based on judicial discretion. *Id.* at 1856–57. The conclusion of *Holden* that the exhaustion requirement in the FSA cannot be waived is supported by the only court of appeals to address the issue so far in connection with the coronavirus. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922 (3d Cir. Apr. 2, 2020) (noting in dicta that the FSA exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point").

But a third approach emerged in *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.). Unlike other courts in the Second Circuit, and like

the *Holden* court, the court in *Haney* acknowledged that the FSA exhaustion requirement is imposed by statute and thus is not subject to a judge-made exception. *Id.* at *3. But, Judge Rakoff reasoned, by deeming exhaustion fulfilled if the BOP did not answer in 30 days, Congress evidenced that it wanted a defendant to have a "prompt judicial determination of whether he should be released." *Id.* at *3. Yet, "[b]ecause of the pandemic, prisoners have inundated the BOP with requests for release." *Id.* at *4. Thus, in Judge Rakoff's view, "in the extraordinary circumstances now faced by prisoners as a result of the COVID-19 virus and its capacity to spread in swift and deadly fashion, the objective of meaningful and prompt judicial resolution is clearly best served by permitting [a defendant] to seek relief before the 30-day period has elapsed." *Id.*

This Court reads the FSA's exhaustion requirement similar to Judge Rakoff. The requirement states that if a defendant hears nothing from his warden about a compassionate-release motion in 30 days, he may proceed to court. *See* 18 U.S.C. § 3582(c)(1)(A). Thus, Congress contemplated that a defendant would be able to seek court redress quickly. But 30 days when the statute was passed and 30 days in the world of COVID-19 are very different. Congress likely did not contemplate that a once-in-a-lifetime pandemic would lead hundreds of federal prisoners to seek compassionate release all within a four-week window. Or, using Judge Rakoff's words, "[b]ecause of the pandemic, prisoners have inundated the BOP with requests for release." *Haney*, 2020 WL 1821988, at *4. Given both the once-in-a-lifetime circumstances of COVID-19 and the personal circumstances of Mr. Atwi—a non-violent offender with no prior criminal history who received a four-month sentence and thus appears to fall within the category of offender that The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Section 12003(b), encourages the BOP to consider for early release—the Court finds that it would respect Congress' intent in placing a 30-day clock on the Warden to act, to allow Atwi's motion to be heard now. As

far as similar future motions, those are left for another day. Today the Court goes no further than saying that Atwi may proceed without waiting 30 days or for the BOP's response.

### III.

Proceeding to the merits of Atwi's request, the Court must determine whether "extraordinary and compelling reasons warrant" a reduction in Atwi's sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

The applicable Sentencing Commission policy statement defines extraordinary and compelling reasons to include four categories: (A) Medical Condition of the Defendant, (B) Age of the Defendant, (C) Family Circumstances, and (D) Other Reasons. *See* U.S.S.G. 1B1.13, cmt. n.(1). The "Medical Condition of the Defendant" includes if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at cmt. n.(1)(A). And "Other Reasons" means "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. n.(1)(D).

Atwi argued in his motion that his diagnosis of tuberculosis is a serious medical condition as defined by the Sentencing Commission policy statement and that this disease in combination with the serious risks presented by the coronavirus pandemic constitutes extraordinary and compelling reasons to grant him immediate release. (ECF No. 27, PageID.199–200.)

The Court recognizes the unprecedented magnitude of this health crisis. And Michigan has been hit especially hard, consistently remaining among the top four states in the number of residents infected and who have died from the virus. *See* N.Y. Times, Coronavirus in the U.S.:

Latest Map and Case Count, https://nyti.ms/3a6vEnp (last visited Apr. 17, 2020). There can be little doubt that incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities. *See United States v. Kennedy*, No. 18-20315, 2020 U.S. Dist. LEXIS 53359, at *4 (E.D. Mich. Mar. 27, 2020). These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

Although the Government argues that FCI Milan has put in place aggressive measures to prevent the spread of COVID-19, including quarantining prisoners in their cells, there are a number of diagnosed positive cases in the facility. (*See* ECF No. 35, PageID.290–291.) As of Friday, the facility reported 37 positive prisoner cases in FCI Milan and 32 staff cases. (*Id.* at PageID.290.) This is a relatively large number for a BOP facility. *See* Federal Bureau of Prisons, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Apr. 17, 2020). Positive cases among federal prisoners continue to rise, and it does not appear that preventative measures are sufficiently working yet to flatten the curve in BOP facilities. *See* Walter Pavlo, "Federal Bureau Of Prisons Institutions Not Showing Any Signs Of 'Flattening Curve,'" Forbes, https://bit.ly/2RL1fF2.

In the midst of these challenging circumstances, a Milan nurse has confirmed that Atwi has been diagnosed with latent tuberculosis and it is unclear if and when the prison will begin the treatment required to prevent the latent TB from developing into the active TB disease.

The Centers for Disease Control and Prevention (CDC) explains that there are significant differences between active and latent tuberculosis. Unlike active TB which affects the lungs and is highly contagious, people with latent TB are not contagious and have no symptoms. *See* Centers for Disease Control and Prevention, "The Difference Between Latent TB Infection and TB

Disease," https://bit.ly/2Vha7EJ. But people with latent TB may develop active TB if they do not receive treatment. *See* Centers for Disease Control and Prevention, "Treatment Regimens for Latent TB Infection (LTBI)," https://bit.ly/2XUKHOX. And treatment regimens for latent TB range from three to nine months, so the infection is not one that is quickly eliminated. *See id*.

Because COVID-19 is so new, there has been limited opportunity to study the interaction between tuberculosis and COVID-19. But one court in California has noted:

> One observational study studied the relationship of tuberculosis and COVID-19 in 36 confirmed COVID-19 patients. It found that "individuals with latent or active TB [Tuberculosis] may be more susceptible to SARS-CoV-249 infection." It also found that "COVID-19 disease progression may be more rapid and severe" in those with latent or active tuberculosis. It identified "tuberculosis history (both of active TB and latent TB) [as] an important risk factor for SARS-CoV-2 infection." The study noted that its findings are limited because it is based on a low number of cases.

*Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020) (citing Yu Chen, et. al., *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity* (March 2020), https://bit.ly/2Vj055Y.). But regardless of whether latent TB can make a person more susceptible to catching COVID-19, if Atwi does catch it, the risks to someone with a co-infection of TB and COVID-19 "are readily apparent," as both are respiratory diseases that affect the lungs. *See* Max Bearak and Joanna Slater, "Among the most vulnerable to coronavirus: The tens of millions who carry HIV and tuberculosis," *Washington Post*, https://wapo.st/2xBSNB5. The Court is not willing to take that risk. And it appears the Attorney General does not want the BOP to take this type of risk either. *See* Office of the Attorney General, Memorandum for Director of the Bureau of Prisons, https://bit.ly/3agsRbq (directing BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic").

Atwi's case has all the hallmarks of being the type of case that the Attorney General had in mind. Atwi is a non-violent offender who does not pose a danger to the community. He is serving a four-month sentence, with only three months remaining, and will still be bound by a significant restitution obligation. *See* 18 U.S.C. § 3553(a). And Atwi has been diagnosed with an infection, which, although it is not currently serious, could make him more susceptible to COVID-19 and serious health consequences. So in light of Atwi's TB diagnosis and the serious dangers caused by the spread of COVID-19 in prison facilities, Atwi has met his burden of demonstrating that compelling and extraordinary reasons justify compassionate release. *See, e.g.*, *United States v. Colvin*, No. 3:19-CR-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) ("In light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will be minimized by her immediate release to home."); *United States v. Rodriguez*, No. 2:03-cr-271, Doc. # 135 at *2 (E.D.P.A. Apr. 1, 2020) (granting compassionate release because "nothing could be more extraordinary and compelling than this pandemic" for a diabetic inmate).

## IV.

For these reasons, the Court GRANTS Atwi's emergency motion for compassionate release (ECF No. 27.) The remainder of his sentence will be reduced to home incarceration without electronic monitoring and on such conditions as the Probation Department deems necessary, to be followed by the term of supervised release previously imposed by the Court. It is further ORDERED that Atwi be released immediately to begin his term of home incarceration.

SO ORDERED.

Dated: April 20, 2020

                                                   s/Laurie J. Michelson
                                                   LAURIE J. MICHELSON
                                                   UNITED STATES DISTRICT JUDGE